IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WALLY MARSHALL** | § | |
| **d/b/a MR. CRAPPIE**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. **3:08-CV-1921-L** |
| v. | § | Consolidated with C.A. 3:09-CV-0233-L |
| | § | |
| **LAWRENCE A. FULTON**, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Plaintiff's Motion for Partial Summary Judgment as to Tortious Interference and Laches/Estoppel, filed October 15, 2010; (2) Defendant's Motion for Partial Summary Judgment Against Plaintiff Wally Marshall, filed October 15, 2010; and (3) Plaintiff's Motion to Dismiss Defendant's Fraud on the Trademark Office Affirmative Defense and Counterclaim, filed October 6, 2010.

After a careful review of the motions, briefs, appendices, responses, replies, record, and applicable law, the court (1) **denies** Plaintiff's Motion for Partial Summary Judgment as to Tortious Interference and Laches/Estoppel; (2) **denies** Defendant's Motion for Partial Summary Judgment Against Plaintiff Wally Marshall.; and (3) **grants** Plaintiff's Motion to Dismiss Defendant's Fraud on the Trademark Office Affirmative Defense and Counterclaim.

## I.    Factual and Procedural Background

Wally Marshall d/b/a Mr. Crappie ("Plaintiff" or "Marshall") filed his Original Complaint and Application for Preliminary Injunction and Permanent Injunction against Lawrence A. Fulton

("Defendant" or "Fulton") in this court on October 28, 2008. His claims presented a federal question under the Trademark Laws of the United States. He amended his complaint on October 31, 2008, January 19, 2009, and May 12, 2010. In the live complaint, Plaintiff's Third Amended Complaint (hereinafter, "Complaint"), Marshall asserts the following claims against Fulton: false designation of origin, declaratory judgment, federal trademark infringement, common law trademark infringement, common law unfair competition, violation of section 16.29 of the Texas Business and Commerce Code, defamation (including libel, slander, and injurious falsehood), and interference with business and contractual relations.

On November 12, 2008, Defendant Fulton filed a civil action against Plaintiff in the District Court in and for Cherokee County, Oklahoma. Fulton asserted the following claims against Marshall: trademark infringement, deceptive trade practices, common law trademark and trade name infringement, and common law unfair competition. Marshall removed that action to the United States District Court for the Eastern District of Oklahoma on December 23, 2008. The case was transferred to this court on February 3, 2009, and the court consolidated the two actions on May 13, 2009. On August 14, 2009, Fulton brought a counterclaim against Marshall for fraud on the trademark office.

Plaintiff is a professional fisherman who developed a line of products for "crappie anglers" based upon the trademark "Mr. Crappie" (the "Trademark"). In 1998, Plaintiff filed an application with the United States Patent and Trademark Office for the Trademark, which was accepted and registered in 1999. Plaintiff sells the products with the Trademark through stores and distributors including Bass Pro Shops, Academy Sports, Cabela's, and Gander Mountain.

Plaintiff claims ownership of the Trademark under federal law. According to him, Defendant has operated his business in Oklahoma under the name "Mr. Crappie," has illegally used the federal trademark registration symbol for his goods, and has attempted to interfere with Plaintiff's business in Texas and other states by writing letters to major stores and distributors that sell his products. Plaintiff alleges that on or about February 25, 2008, Defendant wrote to him demanding royalties and threatening to send a letter to Plaintiff's stores and distributors if he failed to pay; Plaintiff refused. Thereafter, he alleges that Defendant sent letters to numerous stores and distributors, asserting that Plaintiff's use of the Trademark is unauthorized, that Defendant holds rights to the Trademark, that the law supports him, and that Plaintiff's use of the Trademark is an infringement upon Defendant's own trademark rights.

Defendant moves for summary judgment on Plaintiff's claims because he contends that no evidence exists to support them and that he is the senior user of the Trademark. Plaintiff moves for partial summary judgment on his interference with business and contractual relations claim and on his laches and estoppel defense against all of Defendant's claims and counterclaims. In addition, Plaintiff moves to dismiss Defendant's counterclaim for fraud on the trademark office for failure to state a claim upon which relief can be granted.

## II.    Legal Standards

### A.    Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might

affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B.     Motion to Dismiss for Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

**III.    Analysis**

**A.    Plaintiff's Motion for Partial Summary Judgment**

The court first considers Plaintiff's Motion for Partial Summary Judgment as to Tortious Interference and Laches/Estoppel.  Marshall contends that the record and undisputed facts make clear that he is entitled to judgment as a matter of law on his interference with business and contractual relations claim and that all of Fulton's claims and counterclaims against him are barred by laches and estoppel.  The court addresses these matters separately.

**1.    Interference with Business and Contractual Relations**

Marshall's Complaint generally alleges a claim for "interference with business and contractual relations" under Texas law.  Plaintiff specifies his claim by alleging that Fulton wrote to various stores and businesses that sold Plaintiff's products (which used the Trademark), and that Fulton had the intention to cause such businesses to terminate their contracts with Plaintiff. Marshall's brief in support of his motion for partial summary judgment advances the same legal theory.  Accordingly, the court treats Plaintiff's claim for "interference with business and contractual relations" as the more widely recognized Texas cause of action for "tortious interference with an existing contract."

In Texas, the elements of a claim for tortious interference with an existing contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference by the defendant; (3) damage proximately caused by that willful and intentional act; and (4) resulting actual damage or loss.  *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet. denied) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).  Marshall contends that he has developed business relationships over time with certain companies and vendors

that promote and sell his "Mr. Crappie" products, including Bass Pro, Eagle Claw, Academy, Wal-Mart, and Betts Inc. He contends that Fulton was aware of these business relationships and sought to interfere by sending cease and desist letters to the companies and vendors, wherein he directed them to stop selling "Mr. Crappie" products because they violated Fulton's trademark rights.

It is undisputed that Marshall had a licensing agreement with these companies whereby they would sell his "Mr. Crappie" products. *See, e.g.*, Pl.'s App. 49-50. It is also undisputed that Defendant sent letters to some of these companies in 2008, advised them that their "Mr. Crappie" products were infringing on Fulton's trademark rights, and requested them to cease and desist the use of the Trademark. *Id.* at 48. In light of these facts, the court determines that the first and second elements of Marshall's claim for tortious interference with an existing contract are satisfied. Licensing contracts apparently existed between Marshall and these companies, and Fulton acted willfully and intentionally when he mailed cease and desist letters to them. As to the third and fourth elements, regarding proximate causation and resulting actual damage or loss, however, satisfaction of the elements is unclear.

Marshall contends that he endured injury that was proximately caused by Fulton's conduct because "at least one customer receiving the letter stopped selling and/or removed some 'Mr. Crappie' products from its shelves." Pl.'s Br. in Supp. of Mot. Partial Summ. J. at 11. In his deposition testimony, Marshall identified this customer as Academy, and he clarified that Academy only stopped selling "some" of his "Mr. Crappie" products. Pl.'s App. 59 [156:13-15]. He further testified that he was incapable of producing any documents that demonstrate that Academy actually stopped sale of those products or Academy's reasons for stopping sale of those products. *Id.* at 58-59 [155:17-156:5]. He also stated that Academy continues to sell his products today. *Id.* at 59

[156:17-18].  Defendant counters that there is no evidence of proximate causation from Fulton's cease and desist letters, nor is there evidence of resulting actual damage or loss sustained by Marshall.  In its review of the evidence, the court agrees with Fulton.

Marshall stated unequivocally in his deposition testimony that he could not quantify the amount of damage or loss that resulted from Fulton's conduct.  *Id.* at 58-59 [155:17-156:5].  Further, given that Marshall stated that Academy only stopped selling "some" of his "Mr. Crappie" products, the court has a difficult time making the determination that Academy's purported actions were undertaken as a proximate result to Fulton's cease and desist letter.  Marshall's deposition testimony indicates that Academy stopped selling only some, not *all*, of the "Mr. Crappie" products, yet Fulton's letter demanded that Academy stop selling *all* of the "Mr. Crappie" products.  *See id.* at 48.  This suggests that Academy did not act in compliance with the Fulton's directives and could have had other reasons, unrelated to Fulton's conduct, for ceasing the sale of certain "Mr. Crappie" products.

Accordingly, the court determines that a genuine issue of material fact exists with respect to the third and fourth elements of Marshall's claim.  Namely, a genuine issue of material fact exists with respect to whether Fulton's conduct proximately caused injury to Fulton, and a genuine issue of material fact exists with respect to whether Marshall suffered *actual* damage or loss as a result of Fulton's conduct.  The court will therefore deny Marshall's motion for partial summary judgment with respect to his  interference with business and contractual relations claim.

### 2.      Laches/Estoppel

Marshall also moves for partial summary judgment as to all of Fulton's claims and counterclaims because he contends that the record and evidence establish a viable defense of laches

and estoppel.  Specifically, Plaintiff argues that Fulton is barred from injunctive or monetary relief because he inexcusably delayed in asserting his challenge to Marshall's trademark rights, and Marshall was prejudiced by the delay.  "Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights."  *National Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 708 (5th Cir. 1994) (quotations and citation omitted).  To assert the defense of laches, a defendant must satisfy three elements: (1) the existence of a delay by plaintiff in filing suit; (2) the delay was not excused; (3) undue prejudice resulted to the defendant's ability to present an adequate defense.  *Id.* (citing *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985).

The record establishes that Fulton sent his first cease and desist letter, which related to the Trademark, to Marshall in 1998.  Seventeen months later, on October 31, 1999, Fulton sent another cease and desist letter to Plastilite Corporation, a supplier for both Fulton and Marshall, and threatened legal action.  In 2000 and 2001, Fulton became aware of Marshall's federal registration of the Trademark and continued use, yet took no legal action.  On March 19, 2004, Fulton sent another letter to Marshall warning of potential litigation related to Fulton's alleged trademark rights.  On February 25, 2008, Fulton threatened Marshall again and disclosed his intention to send cease and desist letters to Marshall's customers.  In March 2008, Fulton offered to sell his interest in the Trademark to Marshall for millions of dollars.  Finally, on October 28, 2008, Marshall (not Fulton) filed suit against Defendant in this court.  Fulton subsequently filed a lawsuit against Plaintiff in Oklahoma state court on November 12, 2008, which was later consolidated with this action.

Marshall contends that the ten-year delay from his initial contact with Fulton until this lawsuit constituted an inexcusable delay in Fulton's assertion of alleged trademark rights.  Marshall

further contends that he has been prejudiced by Fulton's delay because he relied to his detriment on the lapse by expanding his business around the Trademark. Fulton argues that mere delay does not warrant accepting a laches defense and that "prejudice" must constitute more than expenditures in promoting a business. After conducting its review and researching the matter, the court agrees with Fulton.

The laches period begins to run in a trademark infringement action when the claimant knew or should have known of the alleged infringement. *Elvis Prseley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (citing *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161-62 (5th Cir. 1982)). "Any acts after receiving a cease and desist letter are at the defendant's own risk because [he] is on notice of the plaintiff's objection to such acts." *Id.* (citing *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151-52 (5th Cir. 1985)). Here, it is undisputed that Fulton had notice of Marshall's alleged infringement in 1998 and sent a cease and desist letter to him that same year. Over the course of the next decade, Fulton continued to apprise Marshall of his disapproval of Marshall's use of the Trademark. Marshall nevertheless continued expanding his business and using the Trademark. Finally, in 2008, Marshall took initiative and filed suit against Fulton to protect his trademark rights. This litigation followed.

The court does not believe that Fulton's conduct over the past decade constitutes an inexcusable delay. Marshall was placed on notice as early as 1998 that his continued use of the Trademark was hotly contested by Fulton. That Marshall made the decision to continue using the Trademark, despite Fulton's protests, and that Fulton elected to not immediately take legal action, in no way undermines Fulton's objections to such conduct; Fulton can hardly be said to have

"acquiesced" to Marshall's use of the Trademark because he notified Marshall in writing consistently every few years that Marshall was infringing on Fulton's legal rights.

Further, the court believes that even if the delay were inexcusable, there has been no showing of undue prejudice. Specifically, it was Marshall that initiated legal action. This suggests that Marshall is prepared to demonstrate and prove his legal rights to the Trademark and that he will not be prejudiced by having to defend against Fulton's contrary assertions. The court is unpersuaded that Marshall's expansion of business around the Trademark constitutes detrimental reliance on Fulton's inaction. Nothing in the record indicates that Fulton ever condoned Marshall's use of the Trademark, and Marshall continued using the Trademark at his own risk. Moreover, nothing in the record even intimates that Marshall would not have elected to expand his business anyway, regardless of Fulton's legal assertions concerning the Trademark. For these reasons, the court will deny Marshall's motion for summary judgment with respect to its laches and estoppel defense.

### B.    Defendant's Motion for Partial Summary Judgment

The court next considers Defendant's Motion for Partial Summary Judgment Against Plaintiff Wally Marshall. Fulton moves for partial summary judgment on all of Marshall's claims because he contends that Marshall is not the listed owner of the registration-in-suit and cannot assert rights arising therefrom. Further, Fulton contends that he is the senior user of the "Mr. Crappie" mark and that his legal rights to the Trademark are therefore superior to Marshall's. Finally, Fulton contends that there is no evidence in the record to support any of Marshall's causes of action. The court addresses these matters separately.

### 1.     Owner of the Registration-in-Suit

Fulton contends that Marshall's lawsuit is invalid because Marshall is not the registered owner of the Trademark.  Fulton argues that the owner of the registration-in-suit is a Texas corporation called "WALLY MARSHALL," and that Marshall never corrected this mistake with the United States Patent and Trademark Office.  Accordingly, Fulton argues that Marshall's claims relating to the Trademark should be dismissed because he has no legal right to assert them.  Marshall counters that the corporation designation was, in fact, a mistake and that such mistake is of no consequence because it was inadvertent and nobody could have been reasonably deceived or confused by it.  The court agrees with Marshall.

It is apparent from the record that Marshall has always used the Trademark in his individual capacity.  Fulton correctly notes that there is no Texas corporation by the name of "WALLY MARSHALL" and that such corporation has never existed in Texas.  This fact only strengthens Marshall's contention that the corporation designation was a mistake and that the registration was intended to designate Marshall as the owner of the Trademark in his personal capacity.  The court refuses to exalt form over substance and explicitly declines Fulton's invitation to dismiss Marshall's claims merely because of a labeling error.  In any event, the registration makes clear that an entity or person named "Wally Marshall" asserted a legal right to ownership of the "Mr. Crappie" mark in 1998, and received the federal Trademark in 1999.  Fulton was placed on notice then that he was not the only person with an interest in the Trademark, which is evidenced by his correspondence with Marshall in 1998.

### 2.     Senior Use of the "Mr. Crappie" Mark

Fulton argues that, irrespective of whether the registration-in-suit remains in this case, he was the first between the parties to start using the "Mr. Crappie" name in commerce and is therefore the senior user of the Trademark. Accordingly, he contends that it is his *actual use*, not Marshall's registration, that creates Fulton's legal rights in the Trademark and his priority of ownership.

It is a well-settled tenet of trademark law that ownership of a mark is established by use, not by registration. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990). The first in time to use a trademark is generally held to be the "senior" user and is entitled to enjoin other "junior" users from using the mark, subject to limits imposed by the senior user's market and natural area of expansion. *Id.* at 842-43. "A mark need not be registered in order to obtain protection [under the Lanham Act] because '[o]wnership of trademarks is established by use, not by registration.'" *Board of Supervisors for LSU Agric. & Med. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (quoting *Union Nat'l*, 909 F.2d at 842). The parties do not dispute that Fulton first used the "Mr. Crappie" mark as early as June 1996 in *Oklahoma Game & Fish* magazine. Def.'s App. 4. Fulton secured an Oklahoma state trademark registration for the trademark "Mr. Crappie Bait & Tackle" in 2003. *Id.* at 5-6. In contrast, Marshall's earliest identified use of the "Mr. Crappie" mark was in November 1997, and he filed a federal application to register the Trademark in 1998, which he obtained in 1999. *Id.* at 7-17. Fulton concedes that the alleged scope of his use of the Trademark presents a fact question.

Because the record is undisputed that Fulton began using (and continues to use) the Trademark in commerce prior to Marshall, the court determines that Fulton possesses at least some ownership rights over the "Mr. Crappie" mark. That said, it is uncontested that Fulton's use of the

Trademark is limited to Fulton's connection with his bait and tackle shop located in Fort Gibson, Oklahoma, whereas Marshall's use of the Trademark is on a national scale. The court further determines that the general nature of the goods sold by Fulton and Marshall are sufficiently similar, such that overlap of the Trademark used by each party would create a likelihood of confusion as to the source of the goods. By no means, however, does the court's determination suggest that Fulton is entitled to the *exclusive* right to use the Trademark and enjoin Marshall from such use under all circumstances. The alleged scope of Fulton's ownership and senior use of the Trademark presents a genuine issue of material fact, and the court must deny summary judgment on this point.

### 3. Marshall's Claims

Fulton contends that there is no evidence to support any of Marshall's claims in this lawsuit. Specifically, Fulton argues that Marshall has failed to show or produce any evidence concerning necessary elements of his alleged causes of action. The court addresses Marshall's seven claims: false designation of origin, federal trademark infringement, common law trademark infringement, common law unfair competition, violation of section 16.29 of the Texas Business and Commerce Code, defamation (including libel, slander, and injurious falsehood), and interference with business and contractual relations.

With respect to Marshall's claims for false designation of origin, federal trademark infringement, common law trademark infringement, common law unfair competition, and violation of section 16.29 of the Texas Business and Commerce Code, all of these claims present the same fact question. That is, the limits imposed by Fulton's market and natural area of expansion. Fulton readily admits that the exact territorial limits of his market and natural area of expansion is a question of fact. He nevertheless contends that this fact question does not prevent summary

judgment because Marshall has not shown any evidence that Fulton's use of the Trademark has exceeded those territorial limits. The court takes a different view.

If the precise territorial limits of Fulton's market and area of expansion are undefined (which Fulton concedes they are), it would be impossible for Marshall to make a showing that Fulton had exceeded those territorial limits, other than Marshall's blanket assertions that Fulton was in violation. Here, Marshall has demonstrated that Fulton has used and continues to use the Trademark, and has even gone so far as to contact Marshall's business associates regarding alleged improper use of the Trademark. Marshall contends that these actions by Fulton have amounted to valid claims of false designation, trademark infringement, and unfair competition. Whether Marshall's contentions are correct can only be determined once the extent of Fulton's territorial limits is established. Because a fact question exists, the court will deny summary judgment with respect to these five claims.

With respect to Marshall's claim for defamation, Fulton contends that Marshall has no evidence that Fulton made libelous or slanderous statements, or that Fulton's conduct caused damages. To bring a claim for defamation under Texas law, the plaintiff must establish the following elements: (1) a false statement about the plaintiff was made; (2) the statement was published to a third party without legal excuse; and (3) the plaintiff's reputation was damaged as a result. *Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). In a claim for defamation *per se*, "[t]he words are so obviously hurtful that they require no proof that they caused injury in order for them to be actionable." *Id.* (internal quotations omitted). A claim for defamation *per quod*, however, requires proof of actual damages. *Id.* n.8 (citing *Moore*, 166 S.W.3d at 384).

Marshall's Complaint makes clear that he seeks recovery under defamation *per se* because Fulton published defamatory statements concerning Plaintiff's business. Among the categories of written or printed statements that are classified as actionable *per se* include those "that are falsehoods that injure one in his office, business, profession, or occupation." *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 199 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2011). Marshall contends that at least one of his business associates, Academy, stopped selling certain "Mr. Crappie" products as a result of Fulton's cease and desist letter, which caused Marshall financial injury. Marshall further contends that there was no other reason, but for Fulton's letter, for Academy to stop selling those products.

The court believes that Marshall's defamation claim presents at least two fact questions. First, the court identifies a fact question as to whether Fulton acted "without legal excuse" when he sent the letter to Academy. The record indicates that Fulton honestly thinks that he is the owner of the Trademark and was entitled to protect his interests. Whether he actually possessed an adequate legal excuse will turn on the determination whether Fulton's conduct exceeded the territorial limits of his Trademark use. Second, the court identifies a fact question with respect to Academy's reasoning behind pulling some of Marshall's products from its shelves. Marshall believes that the only reason Academy stopped selling some of his products was because of Fulton's letter; however, that Academy continued selling at least some of Marshall's products after being contacted by Fulton suggests that there may have been other, unrelated reasons for Academy's actions. Based on the record, the court has serious concerns about the viability of this claim. In any event, the court

determines that Marshall has arguably raised sufficient evidence to create a fact question, and summary judgment will be denied.

Finally, with respect to Marshall's claim for interference with business and contractual relations, which the court treats as a claim for tortious interference with an existing contract based on its above analysis regarding Marshall's motion for partial summary judgment, the court again identifies fact questions. As discussed above within the context of Marshall's motion for summary judgment, the court determines that fact questions exist with respect to whether Marshall sustained damage that was proximately caused by Fulton's willful and intentional acts and whether actual damage or loss resulted. As to whether a valid contract existed that was subject to interference by Fulton's willful and intentional acts, the court is satisfied that Marshall has produced sufficient evidence to advance his claim. The court accordingly will deny summary judgment.

### C.  Plaintiff's Motion to Dismiss Defendant's Counterclaim

Marshall moves to dismiss Fulton's counterclaim for fraud on the trademark office pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. "A third party may petition to cancel a registered trademark on the ground that the 'registration was obtained fraudulently.'" *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1064(3)). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Id.* (citing *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed.Cir.1986)).

Here, Fulton contends that Marshall knowingly made a false and material representation of fact in connection with his federal application to register the "Mr. Crappie" mark. Specifically, Fulton argues that Marshall fraudulently represented to the United States Patent and Trademark

Office that he was an agent for the "WALLY MARSHALL" Texas corporation. Fulton contends

that, in actuality, no corporation by that name exists, or has ever existed, in Texas and that Marshall

accordingly lied on his federal trademark application by making such a representation. Fulton

further contends that Marshall made such representations in bath faith because Marshall "knew or

should have known" that he was referring to *himself* as "Mr. Crappie," and was not acting on behalf

of a corporation that he knew did not exist.

Marshall contends that Fulton's pleadings are deficient and that his counterclaim should be

dismissed because Fulton fails to allege the required elements of a claim for fraud on the trademark

office and his assertions are factually insufficient. The court agrees with Marshall in that Fulton's

counterclaim omits facts from which the court could reasonably infer that a fraud claim has been

stated. Specifically, Fulton does not explain why or assert how Marshall's alleged misrepresentation

was "material." From the court's understanding of Fulton's counterclaim, Fulton appears to take

issue with Marshall's representation of himself as a corporation, rather than as an individual. On

the face of Fulton's pleadings, there is no indication that Marshall intended to deceive the trademark

office or that he sought to conceal his involvement with respect to use of the Trademark. Indeed,

Marshall's name is identical to the corporation's. The court cannot draw a reasonable inference

from the pleadings that Marshall intended to use the name of a fictitious entity for the purpose of

inducing the trademark office to register his Trademark. Marshall asserts that he made an honest

mistake when he listed himself as a corporation, and the pleadings make no indication that the

trademark office would not have approved his Trademark's registration if Marshall has correctly

identified himself as an individual.

In other words, the court believes that Fulton's counterclaim is completely lacking in the plausibility that *Iqbal* requires. There must be more "than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). Further, the court is convinced that Fulton cannot amend his counterclaim in such a way that could reasonably characterize Marshall's alleged misrepresentation as "material." Accordingly, the court believes that attempts at amendment would be futile. Regardless of how Fulton could amend, his fraud claim would be missing the key element of materiality. Moreover, Fulton has not requested leave to amend, and the deadline for amendment of pleadings and most other pretrial deadlines have long passed. Allowing amendment at this stage would result in unnecessary delay in that this case is approximately two and a half years old, and the court would be required to extend certain pretrial deadlines that have already expired. Fulton has therefore failed to state a claim upon which relief could be granted, and dismissal of his fraud counterclaim is appropriate pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.    Conclusion

For the reasons stated herein, the court **denies** Plaintiff's Motion for Partial Summary Judgment as to Tortious Interference and Laches/Estoppel; **denies** Defendant's Motion for Partial Summary Judgment Against Plaintiff Wally Marshall; and **grants** Plaintiff's Motion to Dismiss Defendant's Fraud on the Trademark Office Affirmative Defense and Counterclaim. Fulton's counterclaim for fraud on the trademark office is **dismissed with prejudice** for failure to state a claim upon which relief could be granted.

The court has denied both motions for summary judgment and dismissed the fraud counterclaim. This legal squabble has been going on for over twelve years and has culminated in

the filing of two lawsuits. The court's ruling squarely informs the parties of the posture of this case and their respective positions. It is time for the parties to consider seriously whether the dispute can be resolved through settlement. Although neither side ever receives all that it sues for when a case is settled, expenses and attorney's fees will continue to grow so long as this litigation persists. This legal brouhaha needs to come to an end, as neither side is "out of the woods" if the matter proceeds to trial. In this vein, the court urges the parties to let reason and common sense prevail, and engage in fair, levelheaded negotiations. Accordingly, the court **directs** the parties to discuss settlement options and inform it in writing by **May 21, 2011**, whether the parties can resolve their differences by settling this action.

**It is so ordered** this 29th day of April, 2011.

Sam A. Lindsay
United States District Judge